1

2

3

4

5

6

7

8             IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JULIUS COLLINS,

11           Petitioner,              No. CIV S-03-1915 FCD DAD P

12       vs.

13   D.L. RUNNELS, Warden,

14           Respondents.          FINDINGS & RECOMMENDATIONS

15   _____/

16           Petitioner is a state prisoner proceeding pro se with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction

18   entered against him on July 19, 2002 in the Solano County Superior Court on charges of first

19   degree murder with personal use of a firearm and vehicle theft.  He seeks relief on the grounds

20   that: (1) there was insufficient evidence to support his murder conviction on a theory of felony

21   murder; (2) the trial court erred in the felony murder instructions given to the jury; and (3) there

22   was insufficient evidence to support his murder conviction on a theory that the murder was

23   premeditated and deliberate.  Upon careful consideration of the record and the applicable law, the

24   undersigned will recommend that petitioner's application for habeas corpus relief be denied.

25   /////

26   /////

1

## PROCEDURAL AND FACTUAL BACKGROUND[1]

There were no witnesses to Clyde Hoston's murder on November 3, 2000. His body was found in the closet of the house in Vacaville he shared with his wife, Mattie, and his stepson, the defendant.

Both Clyde and Mattie[2] Hoston took vanpools to work in the Bay Area. When Mattie arrived home on November 3, at about 6:45 p.m., Clyde's car, a Lexus, was not in the garage. No one appeared to be home. Assuming that her husband had taken her son on an errand and to pick up some food, she fixed herself a drink and watched television. After a while, she went upstairs to use the bathroom in the master bedroom she shared with Clyde. She noticed a light on Clyde's closet and opened the door. She saw clothing piled on the floor of the closet. When she noticed blood in the corner of the closet, she ran out to a neighbor's house for help. Her neighbor, Jeffrey Lostak, accompanied her back to the house. He looked in the closet and saw a pile of clothing on the floor and blood on the carpet. Lostak called the police.

The police saw no signs of forced entry or of any disturbance in the house, other than in the closet. Underneath the pile of clothes, in a fetal position, with his knees tucked into his chest and his arms tucked under his body, the police discovered Clyde's body. His pockets were turned out and, in his hand, was the lid to a jewelry box. The bottom of the box, containing his wife's pearl ring and wedding ring, was found on the closet floor.

An autopsy showed Clyde had been shot six times. The fatal bullet wound was fired from a gun that was within 17 or 18 inches of Clyde's head. There were also two bullet wounds to his buttocks, one to the back of his shoulder, and two to his hip. Each of these shots struck him on the left side of his body. One of the wound patterns revealed that Clyde had been in a flexed, squatting position, with his thighs close to his torso when the shot was fired. There were no defensive wounds on his body.

Clyde owned a .357 caliber Colt Python gun. He kept it unloaded in its original box in the nightstand next to his bed in the master bedroom. The gun was not in the nightstand when the police searched the house after the murder. The police did find an empty Colt Python firearm box in Clyde's nightstand. The drawer also

---

[1] The following summary is drawn from the May 12, 2003 opinion by the California Court of Appeal for the First Appellate District (hereinafter Opinion), at pgs. 2-4, filed in this court on August 4, 2005, as Exhibit 1 to respondent's Answer.

[2] For clarity, we refer to Mattie and Clyde Hoston by their first names and, in so doing, mean no disrespect.

contained a red plastic ammunition tray.  A firearms expert testified that the bullets recovered from Clyde's body were similar in design, weight, and size to those that would be fired by a .357 caliber revolver and that the gun Clyde owned could have fired those bullets.

Mattie's son, Clyde's stepson, defendant Julius Collins, had been living in the house since October 2000.  Defendant was unemployed and did not own a car or have a driver's license.  Defendant had also stayed with his mother and Clyde earlier in the year.  Mattie's car was stolen around this time and Clyde suspected that defendant had stolen the car.  A neighbor also testified that Clyde was concerned about defendant's presence in his house.

Defendant's fingerprint was found on the empty red plastic box of ammunition in Clyde's nightstand.  In defendant's bedroom, the police found, on defendant's bed, Clyde's key-ring, which held the key to the house and to Clyde's Lexus.  The house key was bent.  Mattie testified that she had never seen it in that condition.  An empty box of Winchester .357 magnum bullets was found in a dresser in defendant's room.

Clyde was last seen by fellow vanpool riders on November 3 between 3:30 p.m. and 4:00 p.m. as he drove off in his Lexus from the Vacaville drop-off point.  According to Mattie, he generally arrived home from work at about 4:00 p.m.

On the afternoon of November 3, defendant was seen by several people in the Hostons' neighborhood.  One neighbor testified that she saw defendant at about 3:45 p.m. in front of the Hoston home.  He looked "spacey."  Both the son of this neighbor and the son's girlfriend testified that, sometime between 5:30 p.m. and 5:45 p.m., they saw the Hostons' garage door open.  A Lexus pulled quickly out of the garage.  Defendant was driving the Lexus.  He drove away fast, swerving abruptly out of the garage.  Another neighbor testified that, at about 5:30 p.m. she heard male voices inside the Hoston home yelling, "Go," or "No."  The voices she heard sounded like men watching a football game.  None of the neighbors testified that they heard any gunshots.

Defendant was arrested in Oakland three days after his stepfather's murder.  He had a key to Clyde's Lexus in his shoe.  The Lexus was parked a block away from where defendant was arrested.  In the trunk of the Lexus was a key-ring which held six keys, including a key to the Hostons' BMW.  Mattie had not given defendant permission to drive the Lexus or take this key-ring.

Defendant was convicted of first degree murder and sentenced to 50 years to life in prison.

/////

3

1    Following his conviction, petitioner filed a timely appeal of his judgment of

2  conviction in the California Court of Appeals for the First Appellate District.  In that appeal he

3  raised the same claims that he raises in the instant petition.  (Answer, Ex. 1.)  With the exception

4  of petitioner's two-year concurrent sentence for the vehicle theft, which was stayed by the

5  appellate court since it was part of the same course of conduct that resulted in the murder, the

6  conviction was affirmed on appeal in a reasoned decision dated May 12, 2003.  (Id.)  Petitioner

7  subsequently filed a petition for review in the California Supreme Court, which was summarily

8  denied by order dated July 16, 2003.  (Answer, Ex. 2.)

9    On September 12, 2003, petitioner filed his initial petition for a writ of habeas

10  corpus in this court, which was dismissed with leave to file an amended petition within thirty

11  days.  On January 29, 2004, petitioner filed his first amended petition for a writ habeas corpus.

12  In response to petitioner's first amended petition, respondent filed a motion to dismiss for failure

13  to exhaust state remedies.  Pursuant to respondent's motion, petitioner's first amended petition

14  was dismissed and petitioner was given thirty days to file a second amended petition presenting

15  only his exhausted claims.  On November 8, 2004, petitioner filed his second amended petition

16  for a writ of habeas corpus. This petition was dismissed without prejudice for failure to file the

17  petition on the form employed by this court.  On December 3, 2004, petitioner filed his third

18  amended petition for a writ of habeas corpus, upon which this action is proceeding.

19                                                    ANALYSIS

20  I.  Standards of Review Applicable to Habeas Corpus Claims

21    A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

22  some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

23  861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

24  Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

25  interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

26  Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

1 | corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377
2 | (1972).

3 | This action is governed by the Antiterrorism and Effective Death Penalty Act of
4 | 1996 ("AEDPA"). See Lindh v.Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d
5 | 1062, 1067 (9th Cir. 2003). Section 2254(d) sets forth the following standards for granting
6 | habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court shall
> not be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of the
> claim -
>
> (1) resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

14 | 28 U.S.C. § 2254(d). See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.
15 | Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

16 | The court looks to the last reasoned state court decision as the basis for the state
17 | court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state
18 | court reaches a decision on the merits but provides no reasoning to support its conclusion, a
19 | federal habeas court independently reviews the record to determine whether habeas corpus relief
20 | is available under section 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);
21 | Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). When it is clear that a state court has not
22 | reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the
23 | AEDPA's deferential standard does not apply and a federal habeas court must review the claim
24 | de novo. Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160,
25 | 1167 (9th Cir. 2002).
26 | /////

1  II.  Petitioner's Claims

2        A.  Sufficiency of the Evidence - Felony Murder

3              Petitioner claims that the evidence introduced at his trial failed to support his

4  conviction on the charge of first degree felony murder because there was insufficient evidence

5  that the victim was killed during the commission of a robbery.  (Am. Pet. at 5.)  Petitioner argues

6  that the evidence as to felony murder was insufficient because there was no evidence establishing

7  the specific circumstances of the shooting.  In this regard, petitioner points to the testimony of

8  Detective John Carli that, in his opinion, this was not a robbery-based murder.  (Id.; Reporter's

9  Transcript on Appeal (RT) at 609.)  Petitioner also argues that although witness Sandra Mallonee

10  testified that she heard yelling, which she associated with a fight or people watching a football

11  game, coming from the victim's home (id. at 484-486), there was no evidence establishing the

12  circumstances surrounding the shooting.  (Am. Pet. at 13.)  He contends that despite the evidence

13  suggesting that someone went through the victim's pockets, there was no evidence establishing

14  that it was the shooter who did so before the victim was shot.  (Id. at 13-14.)  Nor, according to

15  petitioner, was there any evidence presented that the shooting was committed in order to take the

16  victim's car keys.  (Id.)  Petitioner also argues that the victim was found by police still in

17  possession of his wallet, watch and credit cards.  (Id. at 14.)  Petitioner asserts that all of the

18  evidence actually suggests that the victim was likely killed in the course of an argument but not

19  in an attempt to rob him.  (Id. at 14.)  Therefore, petitioner claims, there was insufficient

20  evidence introduced at trial to support his first degree murder conviction on a felony murder

21  theory.

22        1.  State Court Opinion

23              Petitioner's argument in this regard was rejected on the merits by the California

24  Court of Appeal.  The appellate court explained its reasoning as follows:

25              The trial court instructed the jury that in order to convict defendant
               of felony murder, the prosecution had to prove beyond a reasonable
26              doubt that the perpetrator had the specific intent to commit robbery

and that the murder had occurred during the commission or attempted commission of the robbery.  (CALJIC No. 8.21.)  The jury was also instructed on the elements needed to prove robbery. (CALJIC No. 9.40.)[3]  Defendant contends the trial court erred in giving the jury these instructions because there was insufficient evidence Clyde was killed during the commission of a robbery. We disagree.

If there is "insufficient evidence to support one of the prosecution's theories, it is error for the trial court to instruct on it . . . ."  (People v. Campbell (1994) 25 Cal.App.4th 402, 408.)  "'The test for determining whether instructions on a particular theory of guilt are appropriate is whether there is substantial evidence which would support conviction on that theory.  [Citation.]  To determine whether there is substantial evidence to support a conviction we must view the record in a light most favorable to the conviction, resolving all conflicts in the evidence and drawing all reasonable inferences in support of conviction.  We may conclude that there is no substantial evidence in support of conviction only if it can be said that on the evidence presented no reasonable fact finder could find the defendant guilty on the theory presented.  [Citation.]' [Citations.]"  (Ibid.)

Defendant, citing People v. Green (1980) 27 Cal.3d 1 (Green), argues the evidence establishes nothing more than he and Clyde had an argument.  The evidence to which defendant refers is the testimony of a neighbor, Sandra Mallonee.  Mallonee testified that at about 5:30 p.m. she heard male voices inside the Hoston home yelling, "Go," or "No."  She did not testify she heard an argument. Rather she thought the men whose voices she heard were watching a football game.  Defendant, relying on this testimony, contends it is far more likely that any intent to take Clyde's keys and car was an afterthought formed after Clyde's death and, thus, the evidence did not support the felony-murder robbery instruction.

In Green, supra, after the victim was murdered, the defendant took her jewelry, clothing and purse.  The defendant was convicted of robbery.  The court reversed, holding that "a conviction of robbery cannot be sustained in the absence of evidence that the accused conceived his intent to steal either before committing the act of force against the victim (and the intent remained operative until the time of the taking) or during the commission of the act; if the intent arose only after he used force against the victim– i.e., for a nonlarcenous purpose– the taking will at most constitute a theft."

---

[3]  CALJIC No. 9.40 provides that robbery consists of five elements: "1.  A person had possession of property of some value however slight; [¶] 2.  The property was taken from that person or from his immediate presence; [¶] 3.  The property was taken against the will of that person; [¶] 4.  The taking was accomplished either by force or fear; and [¶] 5.  The property was taken with the specific intent permanently to deprive that person of the property."

(Green, supra, 27 Cal.3d at pp. 51-53.)  Defendant notes that the Green court supported its holding by analogy to the "settled rule that when the force used against the victim results in his death, the defendant's intent to rob will not support a conviction of felony murder (§ 189) if it arose after the infliction of the fatal wound. . . . '[T]he evidence must establish that the defendant harbored the felonious intent either prior to or during the commission of the acts which resulted in the victim's death; evidence which establishes that the defendant formed the intent only after engaging in the fatal acts cannot support a verdict of first degree murder based on section 189.'"  (Id. at p. 54, fn. 44.)  Defendant argues that, as in Green, there is no evidence that his intent to steal arose until after the use of force against the victim took place.

We do not agree.  Although the defendant contends the evidence suggests that Clyde's murder was "committed for a personal, non-larcenous purpose," the evidence even more strongly suggests that Clyde was murdered while he was being robbed.  The record contains sufficient evidence to support the giving of the felony-murder robbery instructions.  When Clyde's body was discovered, the top of a jewelry box was in his hand.  The bottom of the box containing his wife's pearl ring and wedding ring was found near his body.  This fact is convincing evidence that, before he died, Clyde was attempting to prevent the theft of these valuable items.  Several items of value were actually taken from the Hoston home, further evidence that Clyde was killed during the course of a robbery.  The gun Clyde kept in his nightstand, which might well have been used to kill him, was missing.  His keys were found on defendant's bed, possibly discarded there because the house key was bent and unusable.  Two other sets of car keys were taken from the home, as was Clyde's car.  Defendant was seen driving this car away from the house on the evening of the murder.  One of the missing car keys was found in defendant's possession and Clyde's car was recovered about a block away from where defendant was arrested.  These facts constitute substantial evidence that Clyde was killed during the commission of a robbery.

The possibility that defendant might have taken Clyde's keys and the car after he was murdered, does not necessarily mean that defendant formed the intent to rob Clyde after he killed him.  It is well established that "when one kills another and takes substantial property from the victim, it is ordinarily reasonable to presume the killing was for the purposes of robbery."  (People v. Turner (1990) 50 Cal.3d 668, 688; People v. Hughes (2002) 27 Cal.4th 287, 357; People v. Marshall (1997) 15 Cal.4th 1, 35 ["If a person commits a murder, and after doing so takes the victim's wallet, the jury may reasonably infer that the murder was committed for the purpose of obtaining the wallet, because murders are commonly committed to obtain money."].)  An inference that defendant formed the intent to rob Clyde before his death was a reasonable one.

Defendant also argues that, because other valuables in the house were undisturbed, there was not substantial evidence that he intended to rob Clyde.  In People v. Kipp (2001) 26 Cal.4th 1100, 1128-1129, a case cited by the Attorney General, our Supreme Court rejected a similar argument that, when a defendant failed to take other property of value from a victim, robbery could not be inferred.  The Kipp court pointed out that the defendant in that case might well have overlooked other items of value because he was in a hurry, possibly because he feared being detected.  In light of Kipp, we reject defendant's argument.

We also disagree with defendant's suggestion that the testimony of the investigating officers establishes that no robbery took place. Detective Steve Carey testified that he assumed Clyde's pockets had been turned out after his death, and Detective John Carli opined that the crime did not appear to be robbery-based murder. These interpretations of the crime scene, however, are not the only way to look at the evidence in this case.  In a case such as this one where the evidence is circumstantial, "we must decide whether the circumstances reasonably justify [the jury's] findings, 'but our opinion that the circumstances also might reasonably be reconciled with a contrary finding' does not render the evidence insubstantial.  (People v. Proctor (1992) 4 Cal.4th 499, 528-529.)" (People v. Earp (1999) 20 Cal.4th 826, 887-888.)  As we have explained, the inferences that Clyde was murdered during the commission of a robbery is reasonable in light of the evidence. Therefore, despite contrary inferences that might be drawn from the record, substantial evidence supports the giving of the robbery felony-murder instruction in this matter.

(Opinion at 4-7.)

2. Applicable Law

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970).  There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).  See also Prantil v. California, 843 F.2d 314, 316 (9th Cir. 1988) (per curiam).  "[T]he dispositive question under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson,

1   443 U.S. at 318).  A petitioner in a federal habeas corpus proceeding "faces a heavy burden when

2   challenging the sufficiency of the evidence used to obtain a state conviction on federal due

3   process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).  In order to grant the

4   writ, the habeas court must find that the decision of the state court reflected an objectively

5   unreasonable application of Jackson and Winship to the facts of the case.  Juan H. v. Allen, 408

6   F.3d at 1275.

7           The court must review the entire record when the sufficiency of the evidence is

8   challenged in habeas proceedings.  Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985),

9   vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is

10  the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw

11  reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.  If the trier of

12  fact could draw conflicting inferences from the evidence, the court in its review will assign the

13  inference that favors conviction.  McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994).  "The

14  relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether

15  the jury could reasonably arrive at its verdict." United States v. Dinkane, 17 F.3d 1192, 1196

16  (9th Cir. 1994) (quoting United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991)).  "The

17  question is not whether we are personally convinced beyond a reasonable doubt.  It is whether

18  rational jurors could reach the conclusion that these jurors reached." Roehler v. Borg, 945 F.2d

19  303, 306 (9th Cir. 1991).  The federal habeas court determines the sufficiency of the evidence in

20  reference to the substantive elements of the criminal offense as defined by state law.  Jackson,

21  443 U.S. at 324 n.16; Chein, 373 F.3d at 983.

22          3. Analysis

23          Viewing the evidence in the light most favorable to the verdict, the undersigned

24  concludes that there was sufficient evidence presented at petitioner's trial from which a

25  reasonable trier of fact could have found beyond a reasonable doubt that he was guilty of first

26  degree murder under a theory of felony murder based on the commission of a robbery.  As the

1   California Court of Appeal explained, evidence introduced at petitioner's trial demonstrated that

2   at the time of his arrest he was found in possession of a key to the victim's car and the car was

3   found parked only a block away from where petitioner was arrested.  In addition, a neighbor had

4   identified petitioner as driving the victim's car, swerving out of the victim's garage and speeding

5   away from the house the evening of the murder.  (RT at 212-19).  Moreover, Detective Carey

6   testified at petitioner's trial that at the crime scene he saw the lid of a jewelry box in the victim's

7   hand and that this lid fit a jewelry box containing a pearl ring and a diamond ring found close to

8   the victim's body.  (Id. at 273.)  There was also testimony that the victim's gun was missing.  (Id

9   at 274-76, 343-44.)

10          Petitioner is correct in stating that Detective Carli, an officer who assisted in the

11   investigation and drafted the search warrant affidavit for the victim's house, testified at trial that

12   he had concluded that this was not a robbery-based murder.  (Id. at 605-06, 609.)  However,

13   Detective Carli also testified that the victim's pants pockets were turned inside-out indicating

14   that the killer had removed something from them, the victim's car was taken, the murder weapon

15   was missing and that the killing appeared to involve both the taking of the victim's car and a

16   theft from the victim's person.  (Id. at 609-10.)  Finally, Detective Carli testified that such facts

17   would establish that a robbery had occurred.  (Id. at 610.)  Although Detective Carli's testimony

18   regarding whether the victim's killing appeared to be a robbery-based murder was internally

19   inconsistent, there was nonetheless sufficient evidence presented from which a jury could

20   reasonably conclude that petitioner killed the victim during his attempt to steal the car, gun, and

21   jewelry.

22          For the reasons described above, the state court's conclusion that sufficient

23   evidence supported petitioner's conviction of first degree murder based on a felony murder

24   theory is not "objectively unreasonable."  Woodford v. Visciotti, 537 U.S. 19, 25 (2002).  See

25   also 28 U.S.C. § 2254(d)(1).  Accordingly, petitioner is not entitled to habeas relief on this claim.

26   /////

B.  Felony Murder Jury Instruction

In a related claim, petitioner argues that the trial court erred in instructing the jury on felony murder because there was insufficient evidence that he had killed the victim during the commission of a robbery.  (Am. Pet. at 11, 17.)  Relying on the decision in Griffin v. United States, 502 U.S. 46, 59 (1991), petitioner contends that "if even one juror" voted to convict him based upon the unsupported felony murder theory, he was denied "a unanimous jury and the judgment of conviction must be reversed."  (Am. Pet. at 17.)

In general, a challenge to jury instructions does not state a federal constitutional claim.  See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  In order to warrant federal habeas relief, a challenged jury instruction "cannot be merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due process right guaranteed by the fourteenth amendment."  Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988) (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)).  To prevail on such a claim petitioner must demonstrate "that an erroneous instruction 'so infected the entire trial that the resulting conviction violates due process.'"  Prantil, 843 F.2d at 317 (quoting Darnell v. Swinney, 823 F.2d 299, 301 (9th Cir. 1987)).  In making its determination, this court must evaluate the challenged jury instructions "'"in the context of the overall charge to the jury as a component'" of the entire trial process.'"  Id. (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir. 1984)).  Thus, in order to prevail on this claim, petitioner must demonstrate that the felony murder jury instructions were given in error and so infected the entire trial that petitioner's right to due process was violated.  Estelle v. McGuire, 502 U.S. 62, 72 (1991).

As explained by the state appellate court, under California law, the test for determining whether jury instructions on a particular theory of guilt are appropriate is whether there is substantial evidence which would support conviction on that theory.  (Opinion at 4-5) (quoting People v. Nguyen, 21 Cal. App. 4th 518, 528 (1993).  To determine whether there is

1  substantial evidence to support a conviction, a reviewing court must view the record "in a light

2  most favorable to conviction resolving all conflicts in the evidence and drawing all reasonable

3  inferences in support of conviction." (Opinion at 5) (quoting Nguyen, 21 Cal. App. 4th at 528-

4  29). A reviewing court may conclude that there is no substantial evidence in support of

5  conviction "only if it can be said that on the evidence presented no reasonable factfinder could

6  find the defendant guilty on the theory presented." Nguyen, 21 Cal. App. 4th at 528-29 (citing

7  People v. Johnson, 26 Cal. 3d 557, 578 (1980)).

8          For the reasons explained above in addressing petitioner's insufficiency of the

9  evidence claim, there was substantial evidence presented at trial from which a reasonable juror

10  could have found that petitioner murdered the victim during the commission of a robbery.

11  Accordingly, the trial court did not err in giving a felony murder jury instructions. Because it

12  was supported by sufficient evidence, felony murder was not a legally flawed theory of

13  conviction under the circumstances of this case and the challenged jury instruction was properly

14  given. For these reasons, petitioner is not entitled to habeas relief on this claim.

15          C. Sufficiency of the Evidence - Premeditation and Deliberation

16          Petitioner alleges that the evidence of his premeditation and deliberation presented

17  at trial was insufficient to support his conviction on the first degree murder charge. (Am. Pet. at

18  5.) He contends that the evidence admitted at his trial did not support the jury's finding of

19  motive or of planning the act and manner of killing as required for premeditation and

20  deliberation. (Id. at 27-29.) As an indication that there was no premeditation and deliberation on

21  the part of the shooter, petitioner points out that the victim's body was only covered by a pile of

22  clothes and was not moved to a different location. (Id. at 28.) Petitioner also points to the lack

23  of any evidence of a serious disagreement between himself and the victim. (Id.) Petitioner

24  contends that the prosecution failed to introduce at trial evidence sufficient to support a

25  conviction of deliberate and premeditated first degree murder.

26  /////

The California Court of Appeal rejected petitioner's argument on appeal.  The state appellate court explained its reasoning as follows:

> Defendant argues the record does not contain sufficient evidence of premeditation and deliberation but, instead, shows, "at most, rash and unconsidered conduct." We do not agree. The evidence in this case, and reasonable inferences that could be drawn from the evidence, constitute substantial evidence of premeditation and deliberation.
>
> First, the evidence strongly suggested that Clyde was killed by the gun he kept, unloaded, in his nightstand. In order to use the gun, defendant first would have been required to obtain bullets for the gun and then load it. An empty box of bullets that fit Clyde's gun was discovered in defendant's bedroom and, thus, the jury not unreasonably could have inferred defendant purchased these bullets in advance in order to use Clyde's gun against him. In addition, defendant's fingerprint was found on an ammunition tray in Clyde's nightstand, again suggesting that defendant planned in advance to shoot Clyde with this gun. In sum, a jury could well have drawn the reasonable inference that Clyde's killing was premeditated in light of evidence that defendant was required to obtain bullets and load the gun prior to shooting Clyde. Although use of a deadly weapon is not always evidence of a plan to kill, obtaining a weapon in advance of a killing has been held to support an inference of planning. (People v. Wright (1985) 39 Cal.3d 576, 593, fn. 5.)
>
> Second, there was evidence from which the jury could infer that defendant had a motive to kill Clyde. Defendant did not own a car and was without a job or other source of income. Moreover, defendant may have previously stolen one of the Hostons' cars. There was testimony that Clyde did not like defendant and was unhappy about his presence in his house. The jury could have drawn the reasonable inference that defendant premeditated the killing in order to provide himself with the car he lacked.
>
> Finally, and perhaps most importantly, the manner in which the murder took place is convincing evidence on which to base a finding of premeditation and deliberation. Clyde was shot at close range to the head in front of his ear. There were no defensive wounds on his body. In People v. Bloyd (1987) 43 Cal.3d 333, 348, evidence of shots to a victim's head and the absence of defensive wounds was found to "describe[ ] actions that were cold and calculated" sufficient to justify a finding of premeditation. Similarly, in People v. Hawkins (1995) 10 Cal.4th 920, 957, the court found evidence of an execution-style murder sufficient to sustain a first degree murder verdict. Here too the evidence showed a close range shot to the head and no sign of a struggle.

/////

14

1               In sum, substantial evidence supports the jury's finding that the
2       shooting was premeditated and deliberate.

3 (Opinion at 8-9.)

4          Viewing the evidence in the light most favorable to the judgment, a rational trier

5 of fact could have found the essential elements of premeditation and deliberation to support a

6 verdict of first degree murder.  In California, premeditation and deliberation can be established

7 through three basic categories of evidence: evidence of planning activity, evidence of defendant's

8 motive, or evidence about the manner of killing.  People v. Boyd, 43 Cal. 3d 333, 347-48 (1987);

9 People v. Anderson, 70 Cal. 2d 15, 26-27 (1968); People v. Gunder, 151 Cal. App. 4th 412, 420

10 (2007) (noting that the factors recognized in Anderson are but a guide for appellate courts and

11 not an exhaustive list that excludes all other types and combinations of evidence that could

12 support a finding of premeditation).  In the instant case, as the state appellate court pointed out,

13 there was sufficient evidence presented at petitioner's trial from which it was reasonable for the

14 jury to infer that this murder was premeditated and deliberate.  First, the evidence established that

15 the victim was shot with his own gun which he kept unloaded.  That evidence was sufficient to

16 support the inference that petitioner had to obtain bullets and load the gun before shooting the

17 victim, thus demonstrating premeditation.  Second, the evidence that petitioner had no job or

18 other source of income and previously tried to steal one of the Hostons' cars suggested that he

19 had a motive to commit the murder in order to steal the victim's car.  Third, the evidence at trial

20 established that the victim was shot at close range just in front of his ear, without any defensive

21 wounds or any sign of struggle.  This evidence of the manner of the killing was sufficient to

22 allow a reasonable jury to infer premeditation and deliberation on the part of petitioner.

23          For these reasons, the decision of the state appellate court rejecting petitioner's

24 argument regarding the sufficiency of the evidence with respect to deliberation and premeditation

25 is not contrary to or an unreasonable application of federal law.  Accordingly, petitioner is not

26 entitled to relief on this claim.

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 19, 2007.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:jp
collins1915.hc

16